4-5 United States v. James Ford My name is Hunter Tabaris. I'm a lawyer from Bangor, Maine. I'm representing James F. Ford, who is, as you're well aware, the husband of Darlene Ford. Your Honor, I would ask for two minutes in rebuttal, if I may. Fine. Thank you. There's four issues that were raised on appeal here that we believe calls for a remand of the sentence and also of the conviction. But I want to start with the issue of whether the 10-year mandatory minimum sentence should have been applied by the court here. And it's our position that the court should never have applied the mandatory minimum 10-year sentence because the grand jury never indicted James Ford for individually manufacturing 100 or more marijuana plants. The indictment, at the very least, is unclear as to what individual drug quantity Mr. Ford was responsible for. And after the Allain decision, the court's well aware that the aggravated amount that triggers the mandatory minimum is an element of defense and must be alleged in the indictment. And Mr. Ford went to trial five months after the Allain case. And the United States Attorney's Office was well aware of Allain and what it required as far as pleading. And that's why I cited on page 22 of my brief the case of Malcolm French, which was up in the United States District Court case up in Bangor, where the government got a superseding indictment after the Allain case where they clearly alleged that the individual drug quantity was, in that case, was 1,000 or more plants. So your argument is the indictment is ambiguous as to whether he was being held personally  Yes, absolutely, Your Honor. But the conviction, the verdict, was not ambiguous. In other words, the jury was properly instructed that they had to find him personally responsible for more than 100 plants. And we objected to the jury ever deciding that issue because it was beyond So what specific test do you point us to when an indictment is ambiguous as to whether someone is being charged with A or B, they're then clearly convicted of A? Is it your position that it's an automatic vacating or reversal? Or do we do a prejudice analysis to see if the ambiguity caused any harm? It's an automatic reversal because it's beyond the scope of what the grand jury voted on. And it's essentially trying, well not essentially, but it is trying, Mr. Ford, for a charge beyond Any indictment that's ambiguous means that any conviction that ensues from that is automatically reversed? If it's ambiguous, well, if I could just back up, Your Honor, it's not that it's ambiguous, it's ambiguous that it doesn't allege all the elements of the offense. So they, certainly the jury could decide whether Mr. Ford was guilty of manufacturing marijuana. But because the grand jury didn't indict him on that element of the 100 plants or more Well, there are two ways to read the indictment, aren't there? That two of them jointly are each responsible for more than 100? Or the way you read it, which is maybe one's responsible for 60 and the other for 40? And that ambiguity, the United States Supreme Court has said that an indictment must allege the offense beyond ambiguity. That must be clear and well into the point. And here there is that ambiguity. So if 100, it says 100 or more, why isn't 100 or more anything above 100, which then each of them could be responsible for anything above 100 apiece? I mean, why is that ambiguous? It's ambiguous because there's two defendants named in the indictment, but it says James Ford and Paul Ford manufactured 100 or more plants. Right. 100 or more. It's the or more that I find seemingly removes the ambiguity. It's anything above 100, which could be 1,000. But if I may, Your Honor. I mean, so that if it says the or more and the jury sorts it out, I'm just having difficulty. Well, I think the way the ambiguity exists and the fact that the total is 100 or more plants, but whether it's James Ford that manufactured 20 and Paul Ford 80, or James Ford 50 and Paul Ford 500, there's certainly, I think, that ambiguity there. And the government, that's why in the Malcolm French case, they went and got that superseding indictment that then clearly alleges that two of those co-defendants manufactured more than 1,000 plants. If you look on page 22 of the brief, where it compares the indictments side by side, in the Malcolm French case, the government alleged three co-defendants under the same language that they used here. But then under the individual quantity aspect of the indictment, it said two of the co-defendants were responsible for 1,000 or more plants. I mean, suppose this just said James F. Ford and Paul Ford went to New York knowingly. We'd naturally read that as that each of them and both of them went to New York knowingly. I would agree with this. Why do we read this differently when it said James F. Ford and Paul Ford did knowingly and intentionally manufacture 100 or more plants? I think it's the manufacturing aspect of it, Your Honor, that if someone, if in the example you gave about them both going to New York, they would both have to go to New York. But when we're talking about manufacturing a total of 100 or more plants, it's unclear whether, again, whether one of them manufactured one and the other 99. If it said... But doesn't that put them on sufficient notice, put him on sufficient notice that he could be responsible for 100 or more, he individually, based upon the way it's drafted? He's not on notice, Your Honor, that the mandatory 10 years would apply because it's not alleging individually against him 100 plants, which was required after the Elaine decision. So he's not on notice there. And I know the government makes an argument that we were on notice before trial, that the government was pursuing this angle, which we were aware of because a few days before trial they filed the request for the jury instruction, for the jury to decide the issue which we promptly objected to. And it gets back to the fact that if the grand... We don't know what the... The grand jury never voted that James Ford was individually responsible for 100 plants. And then to try him on that later sort of supersedes what the grand jury's indictment, scope of indictment was. I think if we took the... If the court was to take the governance position, the holding of Elaine really wouldn't mean much because the government could go in and indict anyone on a simple drug possession or manufacturing case and then just leave it to the jury to decide. I'm confused about how you're using Elaine. I thought Elaine referred to, simply said, that in order to be sentenced for something you have to have been convicted of it by a jury. I agree that Elaine says that, but I... Now we're talking about a separate... And he was convicted of knowingly manufacturing more than 100 plants. We're off to a separate issue. And how does Elaine address the separate issue of what to do if the indictment is ambiguous as opposed to the conviction? And I understand your question, Your Honor. Elaine held that aggravating drug quantity that would create the mandatory minimum is an element of the offense that must be proven and pleaded. And here it wasn't pleaded. I do agree that it was proven, but it never got to the point of being submitted to the jury. So you said we should read Elaine as applying not just to that someone must be convicted,  Yes, absolutely, Your Honor. It creates the drug quantity as an element of the offense. So no longer is it just that you manufactured drugs and that's the offense. The offense now, if you want to plead or if the government wants to invoke the mandatory minimum, you have to plead that aggravated quantity. It becomes part of the... What's your support for reading Elaine that broadly? Essentially, it looks to be applicable to instructional errors or sentencing errors. But you're petitioning for a much broader interpretation. Your authority is what? Well, I don't have to look back exactly. May I answer the question, Your Honor? And I would have to look back exactly at the quotes that I have in the brief. But I recall that Elaine talks about the aggravated drug quantity is now an element of the offense. And if you go back to Apprende, which obviously is before Elaine, but in that case the court was clear that all elements of the offense must be pleaded and proven. And then since Elaine now says this is an element of the offense that needs to be proven, it would go back to the fact that it has to be pleaded. And as well, Your Honor, I know I'm going long, but I believe there's a case that I cited from this court, the name would be escaping off the top of my head, but there's a recent case from this court after Elaine where the court said that aggravated drug quantities must be pleaded and proven as well. So I do think it's an element of the offense, Your Honor. Thank you, Counselor. Margaret McGoy for the United States. Unless the court has questions about the other issues, I will focus my attention on the Elaine issue. In the government's view, I'm very interested for you to find a few seconds to talk about the statement and furtherance of the conspiracy. Sure. I'll do that first. As the court knows, the standard of review for co-conspirator hearsay statements is really very limited. It is a question of clear error. And the question of whether this furthered the conspiracy goes like this. The defendant, James T. Ford, was integral to the conspiracy because he was one of the four workers. So his participation in the conspiracy was critical. The conspiracy was critical to him because that was his only source of income. His girlfriend was threatening to come between them. She was pregnant. She wanted to know whether he was going to be able to support her. So his convincing her that he was able to support her by virtue of the massive marijuana conspiracy he showed to her furthered the conspiracy because it kept him in the conspiracy and it kept the conspiracy alive. But another question about that, Judge Mastroianni, since you've taken me there. The defendant appears to have altered somewhat his co-conspirator hearsay objection. When you read the judge's ruling on co-conspirator hearsay, it pertains only to the witness's testimony that James T. swore her to secrecy. The defendant's reply brief appears to cover everything that Spencer testified. The reply brief notes, and I think cites to the transcript, where the defense said, Judge, essentially you can't let that in because it talks about everyone else's role and what everyone else in the family did with the conspiracy. So the defense is saying that's my objection. And I understand that. And perhaps Judge Woodcock was too limited in saying, I thought I understood you just to object to this one section. But let me answer all of that. A lot of what Spencer testified was not hearsay at all. Wasn't he just bragging to his, I think, pregnant girlfriend? He was, and he elicited that. He said in his opening statement that they would hear evidence that James T. took Spencer to the house, he showed her the marijuana cultivation operation, and he bragged about it. So he opened the door to that testimony by making reference to it in his opening statement. But he opened the door in a conversation that had nothing to do with drugs or the drug business. He opened the door with, you're my girlfriend, you're pregnant, I want you to stay my girlfriend. Don't say anything about this.  means I've got to stay in this conspiracy and for me to stay in this conspiracy means I've got to keep working and it also means I can't let anybody know about the conspiracy. It's not a very difficult inferential leap. But even if that was error The ice on the lake in Maine this winter is very thin. The ice on the lake in Maine this winter is very thin. That's thin ice. Even if this is error, Judge Mastroianni, it's harmless beyond a reasonable doubt because in this case there was no question when the police came in that the bulk of the house was dedicated to cultivating marijuana. The defendant testified that he decided to cultivate marijuana by himself, that he was solely responsible for cultivating marijuana. I'm familiar with the facts. You should circle back to the arguments you wanted to start with. Let me go back to the Aleene error. As I understand the precedent, the court has identified two kinds of Aleene error, most recently in the Pizarro case. One is the instructional error where the element that triggers the statutory maximum is not submitted to the jury for their verdict. The second is sentencing error where the judge makes a quantity determination that triggers the statutory minimum without it having been charged and pleaded. This defendant is asking the court to create a third kind of Aleene error. As you pointed out, there is no authority that stands for the proposition that this third kind of Aleene error occurs. Even if it did, we would circle back to Judge Kayada's question about isn't this always subject to a prejudice analysis? I will get to that more thoroughly. This was not a case in which the defendant said, there are 100 marijuana plants in this basement. Those 99 belong to my son. This one belongs to me. The defendant took responsibility for everything in the basement. He took responsibility for it when he spoke to the police. He took responsibility for it when he testified at trial. The testimony was that the agent seized at least 211 live marijuana plants and that goes to your question, Judge Thompson, anything over 100, doesn't that trigger it? Also, the defendant confessed to the police that this was about to be his 38th harvest of marijuana. He was taking the marijuana to sell it in Massachusetts for $2,000 a pound. Even if this third category of Aleene error exists, and we don't believe it does, even if it exists and even if it should have been charged in the indictment that the defendant alone was responsible for 100 or more marijuana plants, we circle back to the prejudice argument. Do you think the charging document is defective? Do you think the charging document is defective? I don't think there's any problem with it. Not at all, because it charged the defendant and his son, it charged 100 or more marijuana plants, it charged the penalty provisions that heightened it, and it also charged that both of them were aiders and abettors of each other, and as aiders and abettors they would each be responsible for sentencing purposes as if they were the principal. So for all those reasons we don't believe there's any error in the charging document at all. What about ambiguity in terms of, it certainly could have been clearer in saying they were each being charged with 100 or more, rather than collectively. Well, I think you're taking me back to your prejudice argument Judge Kayada. Aren't we really doing a variance analysis rather than a lane analysis? Whichever way you slice it you come back to the fact that A, the defendant never said, I'm only responsible for one, the defendant is responsible for the rest. B, that the defendant admitted that he was responsible for them all. C, the number of plants that were seized, and D, his confession that this was the 38th harvest. So in the government's view, there was no ambiguity in the indictment, but had there been, that ambiguity was harmless beyond any standard in light of the overwhelming evidence. If the court has questions about anything I'm happy to answer them, but the government would again urge the court to affirm. Thank you. I'm sorry Counselor, we have a question. Thank you. The admission of the prior drug case in Massachusetts, can you speak briefly to the point on why that was not more prejudicial than it was in this case considering the overwhelming evidence that you want us to look at and you just explained why that needed to be piled on there and how a jury instruction could have possibly cured under these circumstances that prejudice. I begin on that question Judge Mastroianni by reminding the court that the substance of that evidence came in without objection when the recording of the defendant's confession was played for the jury in which the defendant said, you know I already got popped in Massachusetts I think the undercover informant was the person I was responsible for my conviction. I was only able to keep the two houses because I was growing enough marijuana to pay all the bills, but I wound up with a felony conviction. All of that came in without objection from the defendant. In terms of the evidence to which you are referring, the testimony by Officer Bruce from Massachusetts, it occupied I counted them up last night, I think it's something like 17 pages of almost 600 page transcript so it was not the focal point of the evidence. My other answer to that is the standard of review for the admission of 404B evidence in which it is an abuse of discretion question, and on the 403 balancing test, this court is especially loath to upset those balances because they are so uniquely the province of the trial judge. Does that help to answer your question? Well, that's an answer. Does the court have other questions? I think I should bring it up. This guy got 10 years minimum mandatory for growing marijuana, and I understand the technical and legal arguments as to why the government says the 8th Amendment is not applicable but 10 years. Do you want to comment? I certainly do want to comment. This is a matter of the legislature's discretion. It can always be changed. At the moment it has not been changed, but let me put you, I hope, at ease a little bit on the equities of this case. This is not a man who had two marijuana plants growing on his kitchen window, which he chopped up and smoked with his neighbor. This is a man who made $588,000 cultivating marijuana, and he guarded the plants and the proceeds with semi-automatic handguns. So in the government's view, this is not the case in which you should lose sleep at night. He had been he did it again, and he made $588,000 doing it. Does that answer your question? You want to ask me that again? It's too bad he wasn't in Colorado, though, right? Perhaps. Thank you. Thank you again, Your Honor. Just to pick up on that last point very briefly you brought up, Your Honor. Mr. Ford, he never spent a day in jail, his life, either. He was 60 years old, and as was pointed out at the sentencing hearing, the government said if he was in Colorado doing this, they couldn't say he would be prosecuted. He may not be in jail at all. And I also understand that the firearms were disassembled and not loaded. Exactly, Your Honor. But back to the question that I, or where we were when I stepped down before, is you were asking about how does a lane get to the point of it being an element that needs to be pleaded and proven. And I went back and looked on page 17 of my brief. I quote from Apprende. And Apprende says quote well, it says the statutory sentencing range, quote, must be charged in an indictment submitted to a jury and proven beyond a reasonable doubt, end quote. And it's that must be charged in the indictment that is lacking here. And that's where the prejudice is, is that he's being sentenced or tried and then sentenced on a charge that was not it goes back to the United States v. Miller case which I cited as well in our brief. And in that case the court, the Supreme Court said that quote, the elements of the offense necessary to convict must be fully and clearly set out in the indictment. And it is not fully and clearly set out in the indictment here. And that's the prejudice, that's the error. And now the mandatory tenure should not apply. Now the court could have factored in the drug quantity and determined what an appropriate sentence is but it shouldn't have been bound to that tenure mandatory. How will you prejudice that trial by the ambiguity in the indictment? Because he ended up with a tenure mandatory that the grand jury didn't indict him on. If the grand jury didn't ever vote that he was responsible for a hundred or more plants so he should never have been subject to a mandatory. At trial, how did your defense or the prosecution proceed or the evidence enter in any way different than it would have had the indictment not been ambiguous? Was there anything differently you would have done at all at trial had the indictment been unambiguous? I can't really say, I'm not sure, but certainly it goes, I think the error is at the level of sentencing that he applied that tenure mandatory to sentencing. And unless the court has any other questions, I will rest on that argument. Well, how do you address counsel's point that even as an aider and abetter not the principal, the outcome would still be the same? How does that establish any kind of prejudice if that's true? Because the indictment, even though it alleges aiding and abetting, it's still unclear as to what individual quantity James Ford was aiding and abetting, and it's similar to a conspiracy charge. And as this court's pointed out that even though you allege an overall amount for the individual amount alleged against the co-conspirator to trigger the mandatory minimum penalty. And even if we look in this case in count one, which was a conspiracy charge, I believe it alleged a hundred or more marijuana plants, and the court found that they agree there was no mandatory minimum applied there, even though we're dealing with a conspiracy. And really the aiding and abetting is similar to a conspiracy in the sense that you could be held responsible for what others have done, even though you don't do it all yourself. So I think it's addressed under that sort of analysis. Thank you. Thank you.